UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE VISITING NURSE ASSOCIATION OF GREATER CINCINNATI AND NORTHERN KENTUCKY, | : : : : | Case No. 1:13-cv-585 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : : | |
| HEALTHTRENDS OF OHIO, LLC, | : : | |
| Defendant. | : | |

**ORDER DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 37)**

This civil action is before the Court on Defendant's motion for partial summary judgment (Doc. 37) and the parties' responsive memoranda (Docs. 42, 43). Specifically, Defendant moves for summary judgment on all counts of the Amended Complaint (Count I: unfair competition under the Lanham Act; Count II: violation of Ohio state statutory law; and Count III: common law trademark infringement and unfair competition) (Doc. 21), and on Count I (cancelation of an improper mark) and Count II (attorney's fees) of its Amended Counterclaim (Doc. 35).

**I. BACKGROUND FACTS**

The crux of this action is whether Defendant infringed on Plaintiff's purported trademark by using "VNA" as part of its "VNA Healthtrends" trade name. Plaintiff has used the mark "VNA" in connection with the provision of home healthcare services in Cincinnati and Greater Cincinnati (the "Greater Cincinnati Region") for approximately

100 years. Defendant has provided home healthcare services in the Greater Cincinnati Region since about 2008. In 2001, Defendant rebranded and incorporated VNA into its marketing and advertising. Since that rebranding, Plaintiff claims that it has experienced more than 20 instances of actual confusion.

Defendant argues that VNA is a generic term which literally means "visiting nurse association," and refers to providers of home healthcare services. Defendant maintains that the State of Ohio should not have permitted "VNA" to be a registered trademark and that this Court should order that registration canceled.

## II. UNDISPUTED FACTS[1]

1. Plaintiff-Counterdefendant, the Visiting Nursing Association of Greater Cincinnati and Northern Kentucky, is the registrant of Ohio Trademark Registration No. SM4165, for "VNA." (Doc. 21 at ¶ 8, Ex. A).

2. Plaintiff does business in Ohio and Kentucky. (Doc. 21 at ¶¶ 6-7).

3. Defendant Healthtrends does business under the trade name, "VNA Healthtrends," which has been duly recorded with the Ohio Secretary of State. (Doc. 38, Ex. 31 at VHT 326).

4. Sister companies of Healthtrends in other states likewise do business under the same trade name "VNA Healthtrends." (Doc. 38, Ex. 32 at 3).

5. There are hundreds of VNAs nationwide. (*Visiting Nurse Association-St. Louis v. VNA Healthcare, Inc.*, No. 4:01-cv-1714 ERW (E.D. Mo. July 30, 2002) (Doc. 38, Ex. 24 at 8); 149 Cong. Rec. S2712-13 (daily ed. Feb. 25, 2003) (S. Con. Res. 8); 149 Cong. Rec. H1481 (daily ed. Mar. 4, 2003) (H. Con. Res. 54) (Doc. 38, Ex. 28).

6. Plaintiff is a member of the Visiting Nurses Associations of America ("VNAA"). (Doc. 38, Ex. 20 at 10).

---

[1] *See* Doc. 39 and Doc. 41.

2

7. The VNAA includes over 70 members that use "VNA" as part of their names. (*Id.* at 8-10).

8. A search of the U.S. Patent & Trademark Office for "VNA" yields over 60 entities. (Doc. 38, Ex. 21).

9. Numerous entities with "VNA" in their trade names that have obtained federal trademarks disclaim any attempt to register "VNA." (Doc. 38, Ex. 22). Plaintiff's sole federal trademark is "Live Well! At Home," for which it received registration on January 24, 2012. (*Id.*, Ex. 30 at VNA 2105-09).

10. Plaintiff is aware that other entities use or have used "VNA" in their names, otherwise in their businesses. (Doc. 38, Ex. 33 at 11-12).

11. Plaintiff has never attempted to register "VNA" as a federal trademark. (*Id.* at 10).

12. No entity in Ohio (or elsewhere) has ever sought Plaintiff's permission to use "VNA." (*Id.* at 11).

13. Plaintiff has never taken any action to preclude any entity's use of "VNA," other than Defendant. (*Id.* at 10-11).

### III.     STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be

construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

### III. ANALYSIS

#### A. Generic Terms

The Court's threshold question is whether the term "VNA" is generic.[2] "Whether a name is generic is a question of fact." *Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.*, 76 F.3d 743, 748 (6th Cir. 1996).[3] Because the mark in this case was not federally registered, and because Defendant raised "genericness" as a defense, it is Plaintiff's burden to prove that the mark at issue was, in fact, not generic. *Id.* The Sixth Circuit has consistently held that generic terms are not eligible for federal trademark protection. *See, e.g., Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 404 (6th

---

[2] All three counts in Plaintiff's Amended Complaint are predicated on Defendant's alleged "unauthorized use of VNA as a service mark and trade name." (Doc. 21 at ¶¶ 29, 35, 45-46). Defendant's Amended Counterclaim is also predicated on whether VNA is a generic term. Count I seeks cancellation of the trademark and Count II seeks attorneys fees because Plaintiff knew that "VNA" was generic when it brought the claims. (Doc. 35).

[3] *Bath & Body Works* was before the Sixth Circuit appealing a jury verdict. *Id.*

Cir. 2002) ("A generic term can never function as a trademark.").[4]

Marks may be: "(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (2002). Generic marks are the weakest and can never be trademarks. *Champions Golf Club, Inc. v. The Champions Golf Club*, 78 F. 3d 1111, 1116-17 (6th Cir. 1996). A "generic term is one that is commonly used as the name of a kind of goods. Unlike a trademark, which identifies the source of a product, a generic term merely identifies the genus of which a particular product is a species." *Tumblebus, Inc. v. Cranmer*, 399 F.3d 754, 762 n. 10 (6th Cir. 2005). If a mark is primarily associated with a type of product rather than with the producer, it is generic. *Nartron*, 305 F.3d at 404. "[I]f a term is found to be generic, a court need not even reach the issue of the likelihood of confusion for no trademark protection exists." *The Scooter Store, Inc. v. Spinlife.com,* No. 2:10cv18, 2011 U.S. Dist. LEXIS 148580, at *26-27 (S.D. Ohio Dec. 21, 2011).

For example, in an order denying plaintiffs' motion for preliminary injunction and granting defendants' motion to dismiss (in part), the court in *Visiting Nurse Ass'n – St. Louis v. VNA Healthcare, Inc.*, No. 4:01-cv-1714 (E.D. Mo. July 30, 2012), found that "whether or not confusion existed is not determinative. The question before the court

---

[4] Plaintiff's quote from McCarthy on Trademarks and Unfair Competition that "[e]vidence of secondary meaning…is evidence of trademark significance and is evidence negating a genericness challenge" is taken out of context as is clear from the remainder of the passage. "State courts in Oregon and New Hampshire appear to have adopted the aberrant view that even a 'generic name' is protectable upon proof of 'secondary meaning.' But because this view does violence to the whole logic and policy of what the legal category of 'generic name' denotes, it is outside the mainstream of trademark law." 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition ("McCarthy") § 12:46 (4th ed.).

5

that can be resolved without extensive factual findings is whether the term 'Visiting Nurses Association' is a mark entitled to protection." *Id.* at 3 n. 1. *VNA St. Louis* is instructive because plaintiffs alleged that defendants violated and infringed upon its trade names – "Visiting Nurses" and "VNA." Ultimately, the court concluded that "the term 'Visiting Nurse Association' is a generic mark not entitled to protection." *Id.* at 8. The evidence during a preliminary injunction hearing indisputably showed that plaintiffs were members of the Visiting Nurse Association of America ("VNAA"), and that there are over three hundred organizations in the country that belong to the VNAA. *Id.* [5]

In determining whether a term is generic, "courts consider such evidence as dictionary definitions, competitiors' use, plaintiffs' use, media usage, national testimony by people in the trade, and consumer surveys." *Nat'l Baseball Hall of Fame v. All Sports Promotions Group, Inc.*, No. 99-civ-3635, 2001 U.S. Dist. LEXIS 1592, at *12 (S.D.N.Y. Feb. 20, 2001).

### *1. Dictionary definitions*

The term "VNA" is listed in dictionaries of general usage, which define it as "visiting nurse association." Mirriam-Webster Dictionary online, www.merriamwebster.com/dictionary/vna; Dictionary.com, www.dictionary.reference.com/browse/vna. A term's listing in multiple dictionaries is evidence of genericness. *See, e.g., Harley-Davidson v. Grottanelli*, 164 F.3d 806, 808, 810-11 (2nd Cir. 1999) (finding the listing of

---

[5] Plaintiff argues that *VNA St. Louis* is irrelevant to this case because the decision relates to the mark as used in St. Louis, not the Greater Cincinnati region.

"hog" as a term for a motorcycle is "several dictionaries to be "significant evidence of genericness").

### 2. Other providers

Plaintiff claims that it is the only provider of home healthcare services in the region, other than Defendant, to use the mark "VNA."  Specifically, Plaintiff maintains that it is just one of at least 26 providers of home healthcare services in the region, but it is the only provider of home healthcare services in the region (aside from Defendant) to utilize the mark VNA.  (Doc. 42, Ex. 1 at 12; Ex. 2).  However, Defendant argues that providers use the mark "VNA" in Dayton, Washington Courthouse, and within Plaintiff's service area in Edgewood, Kentucky (Caretakers VNA).  (Doc. 43, Exs. A-D).  Additionally, VNA Nazareth Home Care is located in Louisville, Kentucky, but provides services to patients as close as Trimble, Henry, Franklin, and Scott counties – which are directly adjacent to Plaintiff's service area.  (*Id.*, Ex. E).

### 3. Treatises, academic articles, and news publications

Defendants also produced evidence that published articles use VNA generically to describe a kind of heathcare provider.  For example, "consolidation [is] a necessity for many VNAs" (Doc. 38, Ex. 3), "VNAs are struggling nationwide" (*Id.*, Ex. 4), and "Local VNAs and pharmacies are administering flu shots" (*Id.*, Ex. 5).

While the Defendant makes a compelling case for summary judgment because the evidence supports a finding that the term "VNA" is generic, Plaintiff has yet to complete discovery.  Moreover, Defendants failed to cite any case where a court made a factual

7

finding as to genericness before the close of discovery or at least until after an evidentiary hearing.[6]  *See, e.g., VNA St. Louis*.

### B. Geographic Region

Plaintiff argues that in the Greater Cincinnati Region, patients, caregivers, and medical professionals view VNA as a distinctive source identifier that refers solely to Plaintiff. Accordingly, Plaintiff claims that Defendant's evidence that the VNA mark is generic nationally is irrelevant.[7]

A term may be considered generic in certain regions of the country and not in others. *See, e.g., Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419

---

[6] Discovery closes on December 12, 2014. (Doc. 33). However, the Court is concerned that Plaintiff maintains that it will prove that the mark "VNA" is distinct and not generic by evidencing numerous instances of actual confusion. (Doc. 42-1 at 4-6). The case law clearly states that it is irrelevant whether any customer confusion has arisen or is likely to arise from the concurrent use of a generic term. T. *Marzetti Co. v. Roskam Baking Co.*, 680 F.3d 629, 630 (6th Cir. 2012) ("We agree with the court's decision on the generic quality of the mark and, therefore, find it unnecessary to discuss likelihood of confusion."). Plaintiff must present evidence such as dictionary definitions, competitors' use, plaintiffs' use, media usage, national testimony by people in the trade, and consumer surveys to prove the mark is not generic. *Nat'l Baseball Hall of Fame*, 2001 U.S. Dist. LEXIS 1592 at 12. For example, this Court requires clarification regarding "other providers" use of the VNA mark in the Greater Cincinnati Region.

[7] However, there is a body of case law that suggests otherwise. Trademark law does not protect a mark locally when it "has acquired a '*de facto* secondary meaning' through its exclusive use of a generic term that causes customers to associate the term with that specific source." *Boston Duck Tours v. Super Duck Tours*, 531 F.3d 1, 21 (1st Cir. 2008). Courts look at the generic use of a term nationally, not in the claimant's narrowly-drawn market. *Id.* at 19 (the district court erred when it "overlooked the widespread generic use of 'duck' and 'duck tours' by other companies around the country"); *Hunt Masters Inc. v. Landry's Seafood Restaurant, Inc.*, 240 F.3d 251, 255 n.1 (4th Cir. 2001) ("An Internet search revealed a multitude of 'crab houses' across America, thereby demonstrating that [plaintiff's] use of the term is neither original nor unique."); *Mil-Mar Shoe Co. v. Shonac Corp.*, 75 F.3d 1153, 1159 (7th Cir. 1996) (relying on national use of "warehouse," as well as "shoe warehouse" and "warehouse shoes," to find "Warehouse Shoes" generic, even though "none of these stores were competing directly…in the Greater Milwaukee area").

8

F.3d 925, 930 n.4 (9th Cir. 2005) (reversing finding that Yellow Cab was generic for taxi cab services, holding that evidence of genericness in New York was irrelevant, and ordering the district court to consider what constitutes "the relevant public" for a common law trademark dispute limited to Sacramento, California);[8] *Primary Children's Med. Ctr. v. Scentsy, Inc.*, No. 11-cv-1141, 2012 U.S. Dist. LEXIS 86318, at *9 (D. Utah June 20, 2012) (where the plaintiff only claims rights in Utah, the relevant public is composed of Utah consumers).[9] "When a suggestive or fanciful term has become generic as a result of a manufacturer's own advertising efforts, trademark protection will be denied save for those markets where the term still has not become generic and a secondary meaning has been shown to continue." *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9-10 (2nd Cir. 1976).[10]

---

[8] *Yellow Cab* is a case where the common descriptive name of the product or provider became synonymous with the product over time. Such marks are also known as "dual usage" marks, and famous examples include "aspirin," "Teflon," and "thermos." *Hunt Masters*, 240 F.3d at 255. For dual usage marks, courts "recognize that some residuary secondary meaning and trademark significance remains in the word," and tailor relief accordingly (but do not prohibit the junior user from using the term). McCarthy § 12:51. The Ninth Circuit noted that when considering whether "yellow cab" was generic, the evidence from New York City was not considered "dispositive" because all licensed medallion taxis in New York must be pained yellow, rendering "yellow cab" generic in that market. 419 F.3d at 930 n.4.

[9] Similarly, *Primary Children's* also involves a "dual usage" mark – "Festival of Trees."

[10] *See also Harley-Davidson*, 164 F.3d at 811 (cases permitting geographic genericness of "dual-use" marks "do not stand for the proposition that a commonly used name of an article like 'computer,' 'typewriter' or 'flashlight' can be appropriated by one seller as a trademark"); *Hunt Masters*, 240 F.3d at 254-55 (finding evidence of secondary meaning in plaintiff's local market "irrelevant," because the asserted mark was not a "term [that] has become generic through common use").

9

Even if the Court found that the VNA mark was generic in certain regions of the country, but not in the Greater Cincinnati Region, there are disputed facts regarding whether other medical professionals in the geographic region use the mark "VNA." (*See, e.g.,* Doc. 43, Exs. A-D).[11]

## V. CONCLUSION

Accordingly, for the foregoing reasons, Defendant's partial motion for summary judgment (Doc. 37) is **DENIED** (without prejudice).

**IT IS SO ORDERED**.

Date: 7/29/14

*s/ Timothy S. Black*
Timothy S. Black
United States District Judge

---

[11] In *Bedford Auto Dealers Ass'n v. Mercedes Benz of North Olmstead*, No. 97080, 2012 Ohio App. LEXIS 813 (Ohio App. Mar. 8, 2012), the dealers attached evidence to their summary judgment motion establishing that there were 34 other automiles in the United States and abroad, including two in southern Ohio. *Id.* at 12-13. The dealers also attached evidence of third parties, namely newspapers and magazines, using the term "automile" generically to describe a group of automobile dealers located in a geographic proximity. *Id.* at 18. Plaintiff argued that "automile" came "to have its own definition in northeast Ohio," and, therefore, "acquired a secondary meaning." *Id.* at 18. Plaintiff pointed to its exclusive use in northeast Ohio for decades, as well as its extensive advertising over the years as evidence that it had acquired a secondary meaning. However, the court found that "[u]nder no circumstances is a generic term susceptible of de jure protection under ¶ 43(a) of the Lanham Act, 15 U.S.C. 1125(a) or under the law of unfair competition." *Id.* at 19 (citing *Miller Brewing Co. v. Falstaff Brewing Corp.*, 655 F.2d 5, 7-8 (1st Cir. 1981)) ("No matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise and what success it has achieved in securing public identification, it cannot deprive competing manufacturers of the product of the right to call an article by its name. The reason is plain enough. To allow trademark protection for generic terms, *i.e.*, terms which describe the genus of goods being sold, even when these have been identified with a first user, would grant the owner of the mark a monopoly since a competitor could not describe his goods are what they are.")). Moreover, the court found the fact that consumers were confused was irrelevant, because the mark was generic and therefore the court did not need to consider the likelihood of confusion test. *Id.* at 20.